**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS D. MCNICHOLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 25 C 15705 |
| | ) | |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Thomas McNichols brings this action against Defendant the City of Chicago alleging disability discrimination (Count I), retaliation (Count II), and hostile work environment (Count III) in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Before the Court is the City's motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

The following facts come from the amended complaint and are presumed true for purposes of this motion. All reasonable inferences are drawn in McNichols' favor. The Court also considers McNichols' EEOC charge, attached to the City's memorandum, which is subject to judicial notice on a motion to dismiss. *Saud v. DePaul Univ.*, 2020 WL 5702165, at *4 (N.D. Ill. 2020).

McNichols joined the Chicago Police Department ("CPD") as a police officer in 2003. In or around 2021, McNichols was diagnosed with an aortic aneurysm and heart disease, which required him to take medical leave. During his employment, McNichols would often feel unwell due to his condition and would use earned sick time. He returned to active duty in November 2021.

Upon his return, McNichols learned that, at roll call before his return, Sergeant Candido Lopez had called him a "medical abuser" and instructed officers on the watch to refrain from any contact with him. Within CPD, "medical abuser" is among the most disparaging labels that can attach to an officer. Sgt. Lopez also told officers that a person with a disability must be avoided, ignored, isolated, and cut off. McNichols alleges these comments damaged his reputation and placed his safety at risk in the field. McNichols reported the comments to District Commander Maureen Biggane, but no action was taken.

In April 2023, CPD notified McNichols that he was to be promoted to detective, having scored 45 out of 46 on the competency-based test, placing him in the top 1% of candidates. CPD then placed the promotion on hold indefinitely pending an investigation into an anonymous residency complaint filed in 2018. On May 18, 2023, McNichols' request to remain on the midnight shift was denied. On May 29, 2023, an administrative sergeant emailed the entire unit inviting officers interested in moving to first watch to submit requests.

On June 11, 2023, Lieutenant David Haynes brought a cake to roll call and held a "mock party" celebrating that McNichols was out sick, again calling him a "medical abuser." Recordings, images, and memes of the party were distributed to officers throughout the city. McNichols alleges the dissemination humiliated him and altered the conditions of his employment.

On July 13, 2023, McNichols filed a charge of discrimination with the EEOC alleging disability discrimination and retaliation. The charge states that McNichols was subjected to disability-related harassment, that his disability was disclosed to co-workers, that he was denied promotional opportunities, that he complained, and that the harassment thereafter increased, he was given less favorable assignments, and he was again denied a promotion. The charge identifies January 19, 2022 as the earliest date of discrimination and June 11, 2023 as the latest, and the "continuing action" box is checked.

In February 2018, CPD's Bureau of Internal Affairs ("BIA") received an anonymous letter regarding McNichols' residency. CPD spent over 180 hours and sixty-three covert surveillance sorties on the investigation. The investigation ended in July 2018, and the Superintendent decided not to charge McNichols or report the findings to anyone. On March 15, 2024—nearly six years later and nearly a year after McNichols' promotion hold—the Superintendent filed charges with the Police Board recommending McNichols' discharge for residing in Lombard, Illinois from November

2016 through July 2018. McNichols was suspended without pay effective October 1, 2024.

A hearing on the charges took place from June 9, 2025, through June 11, 2025. On August 21, 2025, the Police Board found McNichols not guilty and ordered him restored to his position with all rights and benefits effective October 1, 2024. The Board stated it was "concerned that it took nearly six years from the conclusion of BIA's investigation until the charges against Respondent were filed with the Board." Dkt. # 19, ¶ 41. The Board was "particularly troubled" that the promotion was halted years after the investigation concluded, observing that the timing "creates the appearance that CPD is holding a cache of charges to be turned loose at any time, possibly for inappropriate reasons" and that "a years-old investigation was pulled out of a drawer and used to prevent Respondent's promotion." *Id.* ¶¶ 43–44. After the Board's ruling, McNichols was returned to duty and promoted to detective, more than two years after he alleges he should have been.

McNichols received a right-to-sue notice from the EEOC on September 30, 2025, and a right-to-sue letter from the Department of Justice on November 24, 2025. He filed this action later that year. The City now moves to dismiss the amended complaint in its entirety.

## <u>LEGAL STANDARD</u>

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d

1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). On a motion to dismiss for failure to state a claim, the Court accepts as true the well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016). Legal conclusions, however, are not entitled to such treatment. *See Twombly*, 550 U.S. at 555.

## DISCUSSION

### I. Administrative Exhaustion

The City first argues that McNichols failed to exhaust his administrative remedies as to all conduct postdating his July 2023 EEOC charge—the Superintendent's March 2024 charges, the October 2024 suspension, and the Police Board proceedings. Generally, a plaintiff may bring only those claims included in his EEOC charge, though claims that are "like or reasonably related" to the charge and that could "reasonably be expected to grow out of an EEOC investigation" of the charge may also proceed. *Cheek v. W. & S. Life Ins.*, 31 F.3d 497, 500–01 (7th Cir. 1994). At a minimum, the "charge and the complaint must describe the same conduct and implicate the same individuals." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005). Because laypersons ordinarily draft EEOC charges, the Court reads the charge liberally. *Id*. at 1047.

The City has the better of the argument as to Count I. As freestanding claims of disability discrimination, the post-charge disciplinary events involve different conduct and different actors than the charge describes. The charge complains of harassment, disclosure of McNichols' disability, and denied promotions; it says nothing of residency, the BIA, or the Superintendent, and it could not, because the charges and suspension had not yet occurred. *See Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005); *Tyburski v. City of Chicago*, 964 F.3d 590, 601–02 (7th Cir. 2020) (claims not exhausted where the charges predated the conduct and a reasonable investigation of the charged conduct would not have led to the later conduct).

The retaliation claim stands differently. The charge itself recounts that McNichols complained to the City and that, "[s]ubsequently, the harassment increased, I was given less favorable assignments, and I was again denied a promotion." Dkt. # 21-1. The charge thus placed the City and the EEOC on notice of an alleged pattern of escalating retaliation for McNichols' internal complaints, marked as a "continuing action." The promotion hold—squarely within the charge—was effectuated by the revived residency investigation, and the amended complaint alleges the post-charge suspension and disciplinary charges flowed from that same investigation as further retaliation for the same complaints. A reasonable EEOC investigation into why McNichols was "again denied a promotion" could be expected to uncover the residency investigation that delayed it and the discipline that followed. *See McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 482–83 (7th Cir. 1996) (a plaintiff need not file a second charge

where the later retaliation grows out of the earlier charge). Requiring a second charge reciting each subsequent act in the same alleged retaliatory course would serve neither notice nor conciliation. The motion is denied insofar as it seeks dismissal of Count II on exhaustion grounds; the post-charge disciplinary events are not exhausted as independent bases for Count I.

## II. Disability

The City next argues that all three counts fail because McNichols has not adequately pleaded that he is disabled within the meaning of the ADA. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include "the operation of a major bodily function," expressly including "circulatory" functions. 42 U.S.C. § 12102(2)(B). The definition of disability "shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A).

The City is correct that a medical diagnosis, standing alone, does not establish a disability. But McNichols pleads more than a bare label. He alleges an aortic aneurysm and heart disease serious enough to require medical leave, and that he often felt unwell due to the condition and required recurring use of sick time after his return. At the pleading stage, allegations of a cardiovascular impairment requiring leave and producing ongoing symptoms plausibly suggest a substantial limitation of a major bodily function. *See Haiman v. Vill. of Fox Lake*, 55 F. Supp. 2d 886, 892–93 (N.D.

Ill. 1999). McNichols also plausibly alleges he was regarded as having an impairment: supervisors twice publicly branded him a "medical abuser" and directed officers to avoid and isolate him because of his condition. Whether the relevant decisionmakers for particular employment actions harbored that perception is a merits question ill-suited to resolution on the pleadings. The motion is denied to the extent it rests on the failure to plead a disability.

## III. Count I — Disability Discrimination

To state a disability discrimination claim, McNichols must plausibly allege that he is disabled, that he is qualified to perform the essential functions of his job with or without reasonable accommodation, that he suffered an adverse employment action, and that the adverse action was caused by his disability. *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022).

Count I falters on causation. McNichols identifies the shift-change denial, the promotion hold, and his suspension as the discriminatory acts. The denial of a single shift request, without more, is not an adverse employment action, and McNichols offers no response to the City's argument on that score, abandoning the theory. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). As for the residency investigation and the suspension it produced, the investigation began in 2018—three years before McNichols' diagnosis—and the amended complaint pleads no facts connecting the discipline to the disability itself, as opposed to McNichols' complaints about how he was treated because of it. The suspension is also unexhausted as an independent basis

for this count, as explained above. What remains is the conclusory assertion that the promotion was delayed "due to" McNichols' disability, Dkt. # 19, ¶ 21, which the Court need not accept without supporting factual content. *Iqbal*, 556 U.S. at 678. The gravamen of the amended complaint is retaliation for complaints, not action taken because of the disability itself. Count I is dismissed without prejudice.

**IV. Count II — Retaliation**

To state a retaliation claim under the ADA, McNichols must plausibly allege that he engaged in statutorily protected activity, that he suffered an adverse action, and a causal connection between the two. *Guzman v. Brown Cnty.*, 884 F.3d 633, 642 (7th Cir. 2018). McNichols' reports of disability-based harassment to command staff in 2021 and again in 2023 are protected activity, and an indefinite promotion hold followed by an unpaid suspension are plainly adverse.

The City's attack is on causation, and it leans heavily on the passage of time between McNichols' complaints and the discipline. But the temporal-gap cases the City cites arise almost uniformly at summary judgment, where the plaintiff must come forward with evidence. At the pleading stage, McNichols "need not present proof of a causal link." *Johnson v. Cambridge Indus.*, 325 F.3d 892, 897 (7th Cir. 2003) (quotations omitted). And McNichols does not rest on timing alone. He alleges that a residency investigation closed without charges in 2018 lay dormant for years; that it was revived only after his complaints and on the eve of a promotion he had earned at the top of his class; and that the Police Board itself—in findings quoted in the amended

complaint—was "particularly troubled" by the sequence, observing that it created the appearance that "a years-old investigation was pulled out of a drawer and used to prevent Respondent's promotion." Dkt. # 19, ¶¶ 33–34, 43–44. A dormant investigation resurrected at a suspicious moment is precisely the kind of circumstantial content that nudges a retaliation claim across the plausibility line. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828–29 (7th Cir. 2014) (no bright-line timing rule at the pleading stage; context matters). Whether discovery bears the inference out is a question for another day. The motion is denied as to Count II.

## V. Count III — Hostile Work Environment

To state a hostile work environment claim, McNichols must plausibly allege that he was subject to unwelcome harassment based on his disability, that the harassment was so severe or pervasive as to alter the conditions of his employment and create an abusive or hostile working environment, and that there is a basis for employer liability. *Ford v. Marion Cnty. Sheriff's Office*, 942 F.3d 839, 856 (7th Cir. 2019).

The conduct alleged—the "medical abuser" label, the isolation directive, the cake party, and the circulated texts and memes—is juvenile and demeaning. But nearly all of it reached McNichols secondhand: he was on leave or absent when the roll-call comments were made and when the party was held, and he does not allege he observed the messages or memes firsthand. "[T]he more remote or indirect the act claimed to create a hostile working environment, the more attenuated the inference that it had an effect on the terms and conditions of the plaintiff's workplace." *Yancick v. Hanna*

*Steel Corp.*, 653 F.3d 532, 545 (7th Cir. 2011); *see also Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 903 (7th Cir. 2018) (comments a plaintiff is told about are the "weakest evidence" of a hostile environment). The amended complaint describes a handful of incidents spread across roughly two years, and its assertion that the conduct was "severe and pervasive" is the sort of conclusory label that cannot substitute for factual content. *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018). McNichols' response, moreover, engages almost none of the City's authority on this point. The Court recognizes that an isolation directive aimed at a police officer carries a sting that ordinary workplace teasing does not, and the dismissal is therefore without prejudice. As presently pleaded, however, Count III does not clear the severe-or-pervasive bar and is dismissed.

## VI. Punitive Damages

Finally, the City moves to strike McNichols' requests for punitive damages. Punitive damages are not recoverable from a municipality, and McNichols concedes the point. The requests for punitive damages are stricken.

## CONCLUSION

For the foregoing reasons, the City's Motion to Dismiss [20] is granted in part and denied in part. Counts I and III are dismissed without prejudice, and the requests for punitive damages are stricken. The motion is denied as to Count II. If McNichols believes in good faith he can remedy the defects identified above, he may file a second amended complaint by 10/5/2026.

It is so ordered.

Charles P. Kocoras

Charles P. Kocoras
United States District Judge

Dated: September 14, 2026